May it please the Court, I'm Robert Jobe and I'm appearing today on behalf of the petitioner Daniel Bejenariu. Before I jump into credibility, I want to talk real briefly about the extraordinary circumstances exception to the one-year rule. Before I jump into credibility, I want to talk briefly about the extraordinary circumstances exception to the one-year rule because this court's never construed the exception and we feel strongly that the immigration judge here applied an incorrect legal standard. Under the regulations, extraordinary circumstances refer to events or factors directly related to the failure to meet the one-year deadline. To establish that he did not intentionally create the circumstances, that the circumstances in question are directly related to his failure to seek asylum within the one-year period, and that the delay was reasonable under the circumstances. Now in the record, the judge referred to the standard at four different points. At page 108, the IJ indicated that Mr. Bejenariu's psychological problems don't qualify as an extraordinary circumstance because they don't, quote, rise to such a level that Mr. Bejenariu was prevented from exploring available legal relief and following through on it. On the next page of the record, the IJ says, quote, there's really nothing in this diagnosis that leads me to conclude that Mr. Bejenariu was so burdened by psychological problems that he was in effect physically unable to find out what his legal rights and responsibilities were in terms of seeking asylum. On page 159, the immigration judge says, in the court's view, nothing described in the record goes to the level that creates such a severe mental disability that Mr. Bejenariu was unable to carry out his duty to get his asylum application filed within one year. Well, the IJ found that he knew about, I mean, he knew he could file for asylum and didn't because he relied on the advice, counsel, of his friends. Why was the IJ compelled to find otherwise? Yeah, I don't think you need to go there. Because it seems to me like critical to the analysis on the extraordinary circumstances is the psychological report, and the IJ completely ignored it. And in doing so, he simply applied an incorrect legal standard. And certainly the psychological report should have been taken into account. I think this is a Ventura-type case where the court should determine that if the immigration judge, in fact, applied an incorrect standard by requiring, you know, something more than the regulations require, requiring that the individual show that he was incapable of filing within one year, which is the way he put it in his What's our standard of review if the facts are undisputed? Well, the way I'm posing this, Your Honor, at this point, I think it's a pure legal question. Right. So if it's a pure legal question, then don't we look at the entire record and determine if an error was made? Not applying. I don't expect this court to apply the correct standard in the first instance, because I think that would violate Ventura. I think what the court has to do is look at the standard that the judge employed, determine whether that standard is consistent with the regulatory scheme, which I don't think it is, and then kick the case back, at least on that question, so that the immigration judge can apply the correct standard in the first instance. I think that's the correct way to approach that. What about the statement that he made that he came here to kind of hide out? Well, yeah, I mean, that's entirely consistent with the psychological report, because the psychological report says that as a result of his post-traumatic stress or whatever other psychological difficulties he's suffering, he has symptoms that include avoiding dealing with the trauma that he experienced in the past. That's entirely consistent with that. Well, not exactly. I mean, if you're hiding out away from the, so that you're not going to be discovered as being an illegal alien, it seems to be more direct. Well, yeah, I don't think he said that exactly, Your Honor. But I guess my point in sum is that the immigration judge viewed this question through an incorrect lens. He didn't view it through the standards set forth in the regulations, and he applied an absolutely different standard. And I don't think it's up to this court to be weighing the evidence in the first instance. That's exactly what the Supreme Court said you're not supposed to do when there's legal error below. If the judge committed legal error here, and we feel strongly that he did, the correct thing to do here is to point that out, remand, so that he can apply the correct standard in the first instance. Counsel, what do we do with the prior case law that says that the decision not to excuse an untimely asylum application is reviewed for substantial evidence? What do you do with that? Well, I think on that factual question about whether or not the application was filed within a one-year period, that, I think, is a purely factual question. I think you would be reviewing that for substantial evidence. Here, however, we have a different situation. Here, the question is, did the immigration judge apply the extraordinary circumstances test in a legally appropriate fashion? And on that, you're reviewing to know. Obviously, there's Chevron deference. It's their own regulation. But insofar as they plainly, the immigration judge plainly violated the meaning of the regulation. Well, I.J. doesn't have to specifically, I mean, set forth each prong in order to make his ruling. I don't disagree with that, necessarily. But what he did here is, on four separate occasions, he said that the alien had to demonstrate that he was incapable of filing within the one-year period. Each and every time he addressed the one-year rule, he used language like that. And that's just wrong. That's not consistent with the regulation. On credibility, we disagree with the government about whether the I.J.'s musings about the unusual nature of Mr. Bagginario's claim, set pages 88 to 89 of the record, provide additional support for his adverse credibility finding. But even if they do, they can't support the finding in this particular case for a number of different reasons. First, during Mr. Bagginario's hearing, no one suggested that the aspects of his claim that the immigration judge talked about at pages 87 to 89 were unusual or implausible. Nobody asked Mr. Bagginario about that. No one asked him to explain any unusual, you know, why it was unusual. And as a result, he never had an opportunity to give an explanation. And thus, they can't be used, those, the issues that the immigration judge is referring to, in the last couple pages of his decision, they can't support an adverse credibility finding under Chen, that's 362 F. 3rd. 611, or Singh, 439 F. 3rd. 1100. But second, if you look at that portion of the immigration judge's decision, it's just completely speculative. I just want to walk through that real quick. First, on page 88 of the record, this is the immigration judge's decision. The immigration judge, this is in the second paragraph there, he suggests that although many people attended ROMA party meetings, he says, with one exception, no one but the respondent was ever arrested. But in his testimony, Mr. Bagginario never said that no one else was arrested. All he said was that I was arrested, and on one occasion, a friend was arrested with me. But that doesn't suggest that no one else was ever attending these meetings or going to the meetings. That's pure speculation on the immigration judge's part. Below that, he says that although the authorities did their best to prevent Mr. Bagginario from attending this IASI party assembly, he says, apparently, others went, and apparently, Mr. Pond, the president, went, and apparently, on this record, the convention went on as scheduled. None of that stuff is reflected in the record. No one ever asked Mr. Bagginario, was the president, did he make it to the party, was anybody else arrested, did the convention go forward? This is all stuff the immigration judge is just speculating. It's not reflected in the record, and it can't form the basis of an adverse credibility finding. The only, you know, of the eight reasons that the government points to to support the adverse credibility determination in this case, Mr. Bagginario was only asked about one. And that's the issue about these multiple parties. And I want to just talk about that real briefly, because this is on, I think, page 167, 168 of the administrative record. Do you contend that it's an obligation of the immigration judge to ask a question of the alien on anything that he's going to rely on? Not necessarily anything, Your Honor. I would take the position of the Second Circuit on that question. I think the issue is if there's a huge inconsistency in the testimony that no one in the courtroom is reasonably going to miss, no. The lawyer should raise that. But on issues like this where the immigration judge, he's not talking about inconsistencies between, you know, the application and the guy's oral testimony. What he's suggesting is that the testimony is somehow inconsistent with the immigration judge's own understanding of the way things work in Romania, or the way the Romanian authorities would treat a dissident. So insofar as he's using those sorts of implausibilities, yeah, he's got to raise that. Because there's no way any of us are going to be able to anticipate what the judge is thinking, especially when it's not reflected by evidence in the record. This is his own perception about the way things should work. So, yeah, he should have raised those. And the fact that he on page 167, 168. I'm running out of time here. But it says, you know, are there a lot of political parties for the Gypsies in Romania? He says no. Are there other parties that represent the Gypsies, political parties? He says no. In point of fact, he's right. He's absolutely right. I mean, if you look at page 265, there's only one Roma representative in Parliament. And it comes from the Roma party. There may be other parties. None of those parties are lawful. If you look at the State Department report, to be a lawful political party in Romania, you need 10,000 members. None of these other parties have that. There's only one representative in Parliament, and he's a member of the Roma party. He was exactly right. Thank you, Your Honor. Thank you, Mr. Chauve. Mr. Golding. Mr. Court, please. I am Marshal Samuel Golding, Department of Justice, representing you. I can't hear you. I'm sorry. I am Marshal Tamar Golding, Department of Justice, representing respondents in this case. There are two distinct questions here. One of them is the Ramadan effect, and the other is credibility. I would like to be able to get to both. I will start off by saying that you don't really need to... Could you hold that microphone? Thank you very much, Judge Hobbs. As we pointed out, you don't actually need to reach the Ramadan question if you don't wish to, because the credibility issue would cover asylum as well as withholding. Well, that was a big point that opposing counsel addressed, was whether or not the IJ used the correct standard in determining whether or not the untimeliness was excusable. That is a clever argument on his part, but it misreads the regulation. Why don't you tell us why? I'm about to. What he cites is what might be called the caveat part of the regulation. In other words, the regulation gives indications. It doesn't say what you have to find in order to find unusual, extraordinary circumstances. It just lists the things that could be. But then it also, and it puts it first rather than afterwards, says even if you find all this, if the petitioner has been responsible for this, then it still doesn't count. So in other words, no, the regulation does not say that if you find that the individual did not cause this problem, then you can find it unusual. You still have to find some reason why it's, I'm sorry, not unusual, extraordinary. You still have to find a reason why it's extraordinary. And I submit that the word extraordinary, unlike changed, is definitely a word which is subjective and value-laden. After all, whether something is changed, you can sort of look and say, yes, this is new or it isn't new. But whether something is extraordinary depends upon the person making the decision, what he considers to be really unusual or more or less to be expected. So therefore, it doesn't fit that part of Ramadan. The second thing that it doesn't fit within Ramadan is that the facts are accepted. Now, the facts that counsel indicates are accepted are the intermediate facts. But the key fact is, in determining whether this is an extraordinary circumstance, is the effect upon the applicant's ability to have applied, filed a timely application. That's the ultimate fact. And as to that, there is a distinct variation between the facts that the IJ found and the facts that petitioner urges. Because the IJ says, in effect, the fact that he was new to this country and he relied on these people, he didn't have to rely on them. He was smart enough. At least he claimed to be a sophisticated political person. He was smart enough to say, hey, get me an attorney. Get me somebody who actually knows American law and can tell me where I stand on this. And the second part, of course, is the psychological evaluation. Now, I will suggest that a psychological evaluation, by its very nature, is not a found fact. It's an opinion. It's an opinion that the fact finder can accept or cannot accept. And as to this, the judge found, well, if it had an effect, if it inhibited, even if maybe it didn't have to find that he made it impossible, at least had to inhibit his ability. If it inhibited his ability in 1998, why didn't it inhibit it in 2000? So, again, these were factual determinations. And for all of those reasons, I suggest that the Ramadan test is not met. And if it is met, again, these show that you can look at this two ways, and therefore there was no compulsion upon the I.J. to find what he did. I've defined differently than what he did. Now, turning, unless there's questions on this, I'll turn to the credibility issue. Two principles apply in a credibility determination. The first is that the burden of proof is upon the applicant to establish that his story is truthful. And the second is that you review a finding against him under the no reasonable fact finder test. Now, the fact that the burden is upon the applicant means that a negative or an adverse credibility determination is not necessarily a determination that, no, this is not a truthful story. It is simply a negative determination that you haven't carried your burden of proving that it is truthful. Maybe so, but I don't know. Maybe you're right, maybe you're wrong. And that is not enough. And, therefore, the test for reversing that is that the indices of credibility must be so compelling that no reasonable fact finder could fail to totally believe the applicant. Counsel, in your view, what was the strongest basis for determining, making the adverse credibility determination in this record? Well, the two, I would say there's three or four or five of them. What's the strongest basis in your view? To be very honest, Judge Walensky, I'm not sure I can say which one is stronger than others. Maybe none of them are strong? Pardon me? Maybe none of them are strong? All were strong. But when you consider the fact, when you consider the fact that the burden You ought to be able to pick out one that you think is Well, I will pick out the fact that he said there were no other parties. He didn't say no other legal parties. He said there were no other parties. And this sort of, hmm, if this guy really is into Is into Roma politics, he would have known better than this. At least this is enough to raise a question. That's all it has to do is raise the question. But I also think that the fact That at least, you may not say it's the strongest, but you say that's very strong. Well, I have a problem with that. That was raised by opposing counsel. If there is only one Party that's in Parliament And the rest of them are illegal That would be kind of a reasonable response, wouldn't it? First off, he wasn't asked, as I recall, which are the legal parties. Secondly, I'm not sure the record shows that these other parties are illegal. We have a lot of parties in this country There's two major ones, but we have What would you respond with regard to this country? I would say that the major, well, you have to phrase the question in a way that would relate to this. So if you phrase the question, what are the parties Who represent the environmentalists, I would say Hmm, probably the Democrats more than the Republicans, but also This little party that Ralph Nader has. So in other words, what I'm saying is That the way he answered it Was enough to raise a question. That's all that it had to do. The case says that all that's needed is to raise a question To support an adverse credibility determination. What case says that? I would say the fact that the burden of proof Is upon the What court has said that in order to support an adverse credibility determination All that is needed is for a question to be raised. Okay, I think actually Sinhu, in effect, says that Because what Sinhu says is That if the judge does not believe The applicant, or doesn't know what to believe Then he can require that there be corroborated evidence. That's a little different than saying a question is raised, though. Because if a question is raised It should be asked. No, the burden is upon him. In other words If I were to stand here and tell you a story You might have doubts About what I'm saying. Well, you wouldn't necessarily ask me about it. But don't our cases say that the I.J. has an obligation To give the petitioner an opportunity to clarify If there are any questions raised regarding the testimony? Well, I would say the burden is upon him, Judge Rawlings. The burden is definitely upon the petitioner. And therefore he has to anticipate. No, the I.J. has an obligation to flesh out the record And to give the testifying witness an opportunity To clarify anything that's questionable in the I.J.'s mind. If the I.J. is going to use that as a basis of adverse credibility And knows that, doesn't the witness have to have an opportunity  If the I.J. is finding you're lying, let's put it bluntly Then that might be so. But if all the I.J. is saying is you haven't convinced me Then I don't think he needs to engage in a I suggest he does not have to engage in a colloquy with him To try to dig out what might possibly just I'm lost. You said that it raises a question. That's your words. That's not what the I.J. did. Well, I'm saying, Your Honor I just don't know what you're trying to argue now. I mean, the I.J. made a determination that the story was implausible Internally inconsistent, and incredible. But he didn't. The I.J. didn't say, oh, well, I question. Well, what I'm suggesting, Your Honor, is And this is something which I will admit judges, I.J.'s Don't always recognize, the board doesn't always recognize But what I am suggesting is that because the burden is upon the applicant I understand that, but what I'm trying to Just figure out here, I think everybody got down a track Because you used the word, I would question His credibility based upon his party answer But that's you talking, right? Is that the basis upon which the I.J. Well, the I.J. gave, he gave six. He gave some others. Never mind. I'm sorry, I mean, he gave six. I would also throw in the fact that he If I may just complete this sentence, I realize I'm out of time I would also throw in the fact that he would say such He said such things as, well, they kept arresting me and then they let me go We understand all the basis upon which the I.J. Is a determination, so thank you. You have run out of time. Mr. Job, you were out of time, too, but we've gone over Mr. Goldin, did you want to add anything? Well, the only point that I want to make, Your Honor, I mean, I think what I want to address the point that Judge Rawlinson, I think, is making That if there's one inconsistency in here that is supported By substantial evidence, that may be enough. And I think that in this particular case That rule wouldn't apply. And I say that because if you look at page 86 Of the immigration judge's decision, what he says is, after looking at these various Factors, what he says is, on balance, taken as a whole You know, the court finds the story as inconsistent, incredible, whatever. I think what he's doing Here is he's looking at these eight factors, whatever, cumulatively, and because He's looking at them cumulatively, if you throw out seven and one remains, I still Think you would have to vacate and remand so that he could consider in the first Instance whether that one inconsistency, if it is supported by substantial Evidence, which we don't believe it is, would justify an adverse credit. I think This is different from our cases like Wang and Lee in that respect. Okay. Thank you, counsel. Thinking of the matter just argued, It will be submitted and will next to your argument In Whitworth v. The Regents, University of California.
judges: Hug, Rymer, Rawlinson